

SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF HAWAII

| | |
|---|---|
| In re:<br><br>STEVEN ISTVAN CSIGI,<br><br>      Debtor. | Case No. 23-00617<br>Chapter 13 |
| VILLIA PONCE, TRUSTEE OF THE FILOMENA D. FELIPE TRUST DATED JANUARY 25, 2014,<br><br>      Plaintiff,<br><br>  v.<br><br>STEVEN ISTVAN CSIGI,<br><br>      Defendant. | Adv. Pro. No. 23-90019<br><br><br><br><br><br>Re: Dkt. 26 |

## MEMORANDUM OF DECISION REGARDING
## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

In a separate case[1], this court held that (1) Marylin Csigi was the trustee of her mother's trust, (2) she breached her fiduciary duty by misappropriating $858,639.00 of trust funds and was liable to the trust for that amount, and (3) her liability to the trust was "for . . . defalcation while acting in a fiduciary capacity" and was not dischargeable under § 523(a)(4).[2] Marylin's[3] husband, Steven Csigi, has now filed his own bankruptcy case, and Villia Ponce, who is Marylin's sister and the successor trustee of the trust, claims that Steven also owes a nondischargeable debt to the trust. Villia contends, and Steven does not deny, that Marylin used the money she misappropriated from the trust for purposes that benefitted herself, Steven, and their children, rather than for proper trust purposes.

---

[1] *Villia Ponce, Trustee of the Filomena D. Trust, Dated January 25, 2014 v. Marylin Felipe Csigi,* Adv. Pro. No. 21-90012 (ECF 76).

[2] Unless otherwise indicated, all citations to sections refer to the Bankruptcy Code, 11 U.S.C., and all citations to rules refer to the Federal Rules of Bankruptcy Procedure.

[3] I will refer to Mr. and Mrs. Csigi and Mrs. Csigi's siblings by their first names solely for the sake of clarity. I intend no disrespect.

2

Villia seeks partial summary judgment on "the equitable counts of her complaint, specifically counts I-II, IV, and VI-VIII."[4] I will grant the motion in part. Among other things, I hold that, if a debtor is legally liable for damages based on another person's fiduciary defalcation, the debtor's liability is not dischargeable under § 523(a)(4).

## I.    FACTS

I made extensive findings of fact after a trial in Villia's case against Marylin.[5] Marylin has appealed my judgment in her case. The Bankruptcy Appellate Panel for the Ninth Circuit affirmed and Marylin's further appeal to the Ninth Circuit Court of Appeals is pending.

For purposes of this motion, Villia does not argue that my judgment in the case against Marylin has preclusive effect in this case against Steven. Instead, she has offered much of the evidence in Steven's case that was admitted in Marylin's case.

---

[4] In his memorandum in opposition to Villia's motion, Steven requests affirmative relief. Because he did not file or give notice of a cross-motion for summary judgment, I will not rule on those requests now.
[5] *Ponce v. Csigi (In re Csigi)*, Adv. Pro. 21-90012, 2022 WL 17572672 (Bankr. D. Haw. Dec. 9, 2022), *aff'd*, 2024 WL 3549726 (Bankr. 9th Cir. July 26, 2024).

U.S. Bankruptcy Court - Hawaii   #23-90019   Dkt # 37   Filed   12/17/24   Page 3 of 17

Steven did not file a response to Villia's concise statement of facts or offer a declaration or other evidence of his own.

Because Steven has not disputed the evidence that Villia has offered in this case or my findings of fact based on the same evidence in Marylin's case, I incorporate those findings in this decision by reference. In particular, there is no genuine dispute as to the following material facts:

1. Marylin was the successor trustee of a trust established by her mother from May 14, 2014, until her mother's passing on June 30, 2018.

2. In October 2016, Marylin used $275,000 of trust money to settle a lawsuit against her, her husband, their business, and two of their children.

3. Between May and December 2016, Marylin used $222,500 of trust funds to add four bedrooms and three bathrooms to a house owned by Marylin and Steven (and, at certain times, by Marylin and Steven's children).

4

4. Marylin used $24,326.22 of trust money to purchase a used vehicle. She placed title to the vehicle in Steven's name.

5. Marylin used a substantial amount of additional trust funds to pay for living expenses for herself, Steven, and her children. She also used trust funds to pay for her mother's care and support. The latter purpose was a proper use of trust funds, but the former was not. The evidence submitted in support of the motion does not show how much money she used for each of these purposes.

6. Marylin's use of trust funds other than for her mother's care and support was not authorized by the terms of the trust and not validly authorized by her mother.

## II.    STANDARDS

Under Civil Rule 56(a), made applicable by Rule 7056, summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant bears the initial burden of demonstrating an absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio*

U.S. Bankruptcy Court - Hawaii   #23-90019   Dkt # 37   Filed   12/17/24   Page 5 of 17

*Corp.*, 475 U.S. 574, 585 (1986). I must view the evidence in the light most

favorable to Steven, the non-moving party, and draw all justifiable

inferences in his favor. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771

F.3d 1119, 1125 (9th Cir. 2014).

The party objecting to nondischargeability of certain debts carries the

burden of proof by the preponderance of the evidence.  *Grogan v. Garner*,

498 U.S 279, 291 (1991).  To promote the "fresh start" policy of bankruptcy,

the exceptions to dischargeability under § 523 are construed against

creditors and in favor of debtors.  *Snoke v. Riso* (*In re Riso*), 978 F.2d 1151,

1154 (9th Cir. 1992) (citing *In re Klapp*, 706 F.2d 998, 999 (9th Cir. 1983)).

### III.   <u>DISCUSSION</u>

Section 523(a) provides that certain kinds of "debt" are not

dischargeable in bankruptcy. "Debt" means "liability on a claim,"

§ 101(12), and "claim" is broadly defined to mean a "right to payment,"

§ 101(5). This means that adjudicating a complaint under § 523 is a two-

step process: first, the court must decide whether the plaintiff has a "right

U.S. Bankruptcy Court - Hawaii  #23-90019  Dkt # 37  Filed  12/17/24  Page 6 of 17

to payment" from the debtor; and then the court must decide whether the resulting debt is not dischargeable in bankruptcy.

Villia seeks a partial summary judgment awarding "money damages for the equitable claims of the complaint," a declaratory judgment that two limited liability companies are alter egos of Marylin and Steven, and a determination that the damages award is not dischargeable under § 523(a)(4). I must determine whether Steven owes a debt to Villia, the amount of that debt, and whether that debt is not dischargeable.

### A. <u>Does Steven Owe a Debt to Villia?</u>

The parties' arguments center on § 523(a)(4). But, as I note above, the first step is to determine whether Steven owes any debt to Villia. As the Supreme Court explained in a slightly different context, section "523(a)(2)(A) does not define the scope of one person's liability for another's fraud. This is the function of the underlying law – here, the law of California. Section 523(a)(2)(A) takes the debt as it finds it, so if California did not extend liability to honest partners, § 523(a)(2)(A) would have no role to play." *Bartenwerfer v. Buckley*, 598 U.S. 69, 82 (2023).

7

Villia's complaint alleges several theories of liability. But her motion speaks only to "equitable claims," and at oral argument her counsel stated that the primary focus was on the claims for unjust enrichment.

Under Hawaii law, a valid claim for unjust enrichment requires that the plaintiff prove that a benefit was conferred "upon an opposing party and that retention of that benefit would be unjust." *Porter v. Hu*, 116 Haw. 42, 55 (Haw. 2007) (quoting *Durette v. Aloha Plastic Recyling, Inc*. 105 Haw, 490, 504 (2004)). This equitable remedy is invoked only when there is no adequate remedy at law. *Id*. "A person that has been unjustly enriched at the expense of another is expected to make restitution to the other." *Durette.*, 105 Haw. at 502 (Haw. 2004) (quoting *Restatement of Restitution* § 1 comment b (1937).

Steven does not deny that he benefitted from Marylin's misappropriation of the trust's money. The trust paid to settle claims that could have destroyed the business that he and Marylin owned, to buy a vehicle in his name, and to renovate and expand the home which he, Marylin, and their children owned and occupied. It would be unjust for

8

Steven to retain that benefit. If one asks whether Steven or the trust should have the benefit of the money that Marylin misappropriated, the answer is easy: the trust should have the money and Steven should not. Therefore, I will grant summary judgment on the portion of Count VIII claiming that Steven is liable to Villia for unjust enrichment.

Count I of Villia's complaint alleges that Steven is the alter ego of the companies whose debts were settled with the trust's money. The companies probably are liable to the trust on an unjust enrichment theory. But she offers no evidence to support the assertion that the court should "pierce the corporate veil" and hold Steven liable for the companies' debt. Further, piercing the corporate veil is unnecessary: Steven was a defendant in the settled lawsuit, so Steven benefitted directly from the trust's payment of the settlement amount. Thus, I will deny her motion as to Count I.

### B. What is the Amount of Steven's Debt?

The next question is the amount of Steven's unjust enrichment debt.

9

During Marylin's trusteeship, the assets of the trust fell from $873,739.00 to zero. I held her liable for all of this amount except for $15,100 of gifts that Marylin was able to substantiate as proper uses of trust funds. Marylin's expenditures of trust money included items that benefitted Steven: (1) $275,000 that she used to settle a lawsuit against her, Steven, their business, and two of their children, (2) $222,500 that she used to add four bedrooms and three bathrooms to her family home, (3) $24,326.22 that she used to buy a vehicle that she titled in Steven's name, and (4) all of the trust's cash that remained when her mother passed away ($42,109.69) which she deposited in Steven's bank account. These disbursements, totaling $563,935.91, unjustly enriched Steven.

I held Marylin liable for the remainder of the lost trust funds ($294,703.09) because, although Marylin testified that she used that money for her mother's benefit or at her mother's direction, she failed to keep any records from which one could distinguish proper from improper disbursements. Based on her failure to comply with a trustee's record-keeping duties, I held her liable for the entire amount (less $15,100 of gifts

10

that she substantiated). In other words, I ruled against Marylin because, as trustee, she had a duty to account for the trust funds, and her failure to comply with that duty made it appropriate to draw inferences against her. But Steven was not a trustee of the trust and had no duty to account. Therefore, the burden of proof remains with Villia, as plaintiff, and she has failed to carry that burden for purposes of summary judgment as to the balance of $294,703.09.

## C. Is Steven's Debt to Villia Not Dischargeable?

The final question is whether Steven's debt to Villia is nondischargeable under one or more subsections of § 523(a). Although her complaint cites multiple subsections, Villia's motion for partial summary judgment relies primarily on § 523(a)(4). That provision applies to "any debt . . . for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . . ."

I held in Marylin's case that her debt to the trust was for defalcation in her capacity as the trustee of her mother's trust. This is the debt for

11

which Steven is liable. Although Steven's liability rests on unjust enrichment, the underlying debt is "for" Marylin's fiduciary defalcation.

Steven argues that § 523(a)(4) does not apply because he did not commit any of the types of wrongdoing described in that subsection and Marylin's wrongdoing cannot be attributed to him.

The Supreme Court addressed a similar argument under § 523(a)(2) in *Bartenwerfer v. Buckley*, 598 U.S. 69 (2023). Two people who were married and were also business partners renovated and sold a house. The buyer contended that the sellers had not disclosed material facts about the home. The sellers filed a chapter 7 bankruptcy case, but the bankruptcy court held that neither husband nor wife could discharge their debts to the seller: the husband had fraudulently concealed facts from the buyer; and the wife was liable with him because they were business partners. The wife appealed, arguing that § 523(a)(2) only applies if the debtor personally committed wrongs of the types described in the statute. The Supreme Court rejected this argument, noting that Congress wrote § 523(a)(2) in the passive voice.

12

According to the Court, this means that the identity of the actor is irrelevant. What matters is the nature of the debt.

The same reasoning applies to subsection (4). Like subsection (2), Congress wrote subsection (4) entirely in the passive voice. Nothing in subsection (4) specifies that the debtor must be the person who committed the wrong. If the debtor is legally responsible for the damages flowing from such wrongdoing, the debtor's liability is not dischargeable.

Although Villia's counsel verified that the motion does not seek summary judgment under § 523(a)(6) as alleged in Counts II, IV, VI, VII, and VIII, it is worth pointing out that the Court's reasoning in *Bartenwerfer* does not apply to that subsection. Section 523(a)(6) applies to "any debt . . . for willful and malicious injury **by the debtor** to another entity or to the property of another entity [emphasis added]." *See also* § 1328(a)(4). By its terms, § 523(a)(6) only applies if the debtor is the wrongdoer. This demonstrates that, when Congress wanted to limit nondischargeability to the wrongdoer, it said so.

13

Courts applying § 523(a)(4) after *Bartenwerfer* have first considered whether the wrongdoing is of the kinds described in the section, and then considered whether the debtor is liable for that wrongdoing under applicable nonbankruptcy law. For example, in *Mercer v. Lee (In re Lee)*, 2024 WL 1261790 (Bankr. E.D.N.Y. March 25, 2024), Mercer and Ira Lee were joint venturers. Mercer alleged that Ira earned secret profits from the joint venture by including undisclosed markups in billings to the joint venture by corporations controlled by Ira and his wife, Helen. Mercer claimed that both Ira and Helen were liable for the secret profits and that their liability was not dischargeable. The bankruptcy court sustained Mercer's claims against Ira under § 523(a)(2) and (4) but held that Helen was not liable. Her only involvement was as an owner of one of the corporations that overbilled the joint venture, and the owner of a corporation is not liable for its debts under applicable state law. *See also Industrial Dev. Authority v. Poe (In re Poe)*, 2023 WL 4359972 (Bankr. E.D. Va. July 5, 2023) (§ 523(a)(4) did not apply where debtor had no agency relationship with the wrongdoer and there was no other basis under state

14

U.S. Bankruptcy Court - Hawaii   #23-90019   Dkt # 37   Filed  12/17/24   Page 14 of 17

law to hold debtor liable for the wrongdoer's scheme); *Auction Credit Enters., LLC, v. Desouza (In re Desouza)*, 659 B.R. 288, 300 (Bankr. E.D. Tex. 2024) (holding that, "under § 523(a)(4) a debtor may be held liable for the embezzlement or larceny of a conspirator, partner, or agent as determined under state law. Any cause of action alleging embezzlement or larceny under § 523(a)(4) would fail if no required conspiracy, partnership, or agency under state law exists, or if evidence is insufficient of the actions of Defendant's conspirator, agent, or partner."); *Kuns Northcoast Security Center LLC v. Sharp (In re Sharp)*, 2024 WL 2819674, *11 (Bankr. N.C. Ohio June 3, 2024) ("Like § 523(a)(2)(A), the language of § 523(a)(4) is agnostic about who the bad actor is.")[6] This case is distinguishable from cases like *Lee* and *Poe* because, in those cases, nonbankruptcy law did not hold the debtor liable for the wrongdoing, while in this case Steven owes a debt

---

[6] In *City of Ziegler v. Uhls (In re Uhls)*, 653 B.R. 154, 165 n.15 (Bankr. S.D. Ill. 2023, the court remarked in a footnote that the court did not need to consider whether *Bartenwerfer* applies to § 523(a)(4) because the Court "limited its analysis in that case to § 523(a)(2)(A), and in any event, no special relationship existed . . . to support vicarious liability under Illinois law . . . ." The court did not support the first part of this comment with any analysis, and I respectfully disagree with it.

15

U.S. Bankruptcy Court - Hawaii   #23-90019   Dkt # 37   Filed 12/17/24   Page 15 of 17

(under the unjust enrichment theory) that is "for" Marylin's fiduciary defalcation.

Therefore, I will grant Villia's motion as to the portion of Count IV alleging that Steven's liability is not dischargeable by virtue of § 523(a)(4).

## D. Is a Constructive Trust Appropriate?

Villia's motion asks the court to impose a constructive trust on Steven and Marylin's home. I am unwilling to grant that request at this time. A constructive trust gives the beneficiary of the trust priority over other creditors. But in a bankruptcy case, all unsecured creditors who lack statutory priority must be given equal pro rata treatment, and bankruptcy law protects all such creditors against unauthorized liens and other transfers. Therefore, a constructive trust is neither necessary nor appropriate at this stage of the case.[7]

---

[7] If Steven's bankruptcy case is dismissed, Villia could protect the trust's interests by recording a money judgment issued by this court.

U.S. Bankruptcy Court - Hawaii  #23-90019  Dkt # 37  Filed  12/17/24  Page 16 of 17

## IV. CONCLUSION

Villia's motion for partial summary judgment is granted in part to the following extent: (1) Steven owes a debt to Villia, in her capacity as successor trustee of the Filomena D. Felipe Trust Dated January 25, 2014, for defalcation in a fiduciary capacity (Count IV) as he was unjustly enriched by Marilyn's wrongdoing; 2) Steven's debt to Villia is in the amount of $563,935.91; and (3) Steven's debt to Villia is not dischargeable in bankruptcy. The motion is denied in all other respects.

**END OF MEMORANDUM DECISION**